IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MANUEL OLIVERA-PAGAN, *et al.*,

    **Plaintiffs**,

        **v.**

MANATI MEDICAL CENTER, INC., *et al.*,

    **Defendants**.

**Civil No.** 14-1553 (FAB)

**MEMORANDUM AND ORDER**[1]

BESOSA, District Judge.

    Before the Court is defendants' motion to alter the amended judgment, (Docket No. 23), which plaintiffs oppose, (Docket No. 24). For the reasons discussed below, the motion is **GRANTED**. The amended judgment, (Docket No. 22), is modified, and the case against Dr. Hernan Fuentes-Figueroa is **DISMISSED WITH PREJUDICE**.

**BACKGROUND**

    On April 14, 2014, plaintiffs Manuel Olivera-Pagan and Daisy de Jesus-Miranda filed a medical malpractice suit against Dr. Hernan Fuentes-Figueroa ("Dr. Fuentes"), Manati Medical Center ("MMC"), and Ciales Primary Health Care Services ("CHC")[2] in Arecibo Superior Court. See Docket No. 1-1. Plaintiffs claimed that defendants were negligent in treating Ms. Miranda during the

---

[1] Rachel L. Hampton, a second-year student at the University of Michigan Law School, assisted in the preparation of this Memorandum and Order.

[2] CHC is now known as "Prymed Medical Care, Inc." (Docket No. 27 at pp. 2-3.)

Civil No. 14-1553 (FAB)                                                   2

delivery of her infant son in April 2010.  See Docket No. 12-1 at pp. 1-3.  Plaintiffs allege that though Ms. Miranda received prenatal care from Dr. Fuentes at CHC, the birth took place at MMC. Id. at p. 2.

Defendant CHC is a federally-funded health center pursuant to the Federally Supported Health Care Centers Assistance Act, 42 U.S.C. §§ 233(g)-(n) ("FSHCAA"), and has been deemed a federal employee of the Public Health Service since January 1, 2009. (Docket No. 12-1 at p. 3.)[3]  Dr. Fuentes worked at CHC from April 18, 2006 to September 30, 2010, and was likewise deemed a federal employee during his tenure.  Id.  The Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. ("FTCA"), thus governs the claims against CHC and Dr. Fuentes during the events in question.  See id.; Docket No. 27 at p. 3.

On July 11, 2014, at the request of defendants CHC and Dr. Fuentes, the case was removed to this Court.  (Docket No. 1.)

---

[3] Pursuant to the FSHCAA, certain private "health centers" that serve underserved populations and that request and receive federal grant money pursuant to section 330 of the Public Health Act, 42 U.S.C. § 254b, may apply to the Department of Health and Human Services ("HHS") to be "deemed" an employee of the Public Health Service by the Secretary of HHS.  42 U.S.C. § 233(g)(1)(D).  "Once a health center is deemed to be a federal employee, 'the health center need not purchase and maintain malpractice insurance for itself or its physicians' because in effect, the United States through the FTCA, 'exposes itself to lawsuits, in place of a health center.'"  Lacey-Echols ex rel. Lacey v. Murphy, Civ. No. 02-2281 (WGB), 2003 WL 23571269, at *4 (D.N.J. Dec. 17, 2003) (quoting Miller v. Toatley, M.D., 137 F. Supp. 2d 724, 725 (W.D. La. 2000)).  "The purpose of this is to allow deemed health centers to reduce their costs so that more funds are available for direct service to underserved populations."  Id.

On September 10, 2014, the United States Attorney for the District of Puerto Rico moved to substitute the United States as the defendant, certified that Dr. Fuentes was acting "within the scope of his employment" as an employee of CHC at the time of the conduct alleged in the complaint, and moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and (12)(b)(6) for lack of subject matter jurisdiction and for failure to exhaust the administrative remedies that are required by the FTCA.  (Docket No. 12.)

On November 21, 2014, plaintiffs moved for voluntary dismissal, (Docket No. 16), which the Court granted, (Docket No. 18).  The Court dismissed *with* prejudice all claims against Dr. Fuentes and CHC and dismissed *without* prejudice the claims against MMC.  (Docket No. 18.)  Judgment was entered accordingly on November 24, 2014.  Id.

On December 2, 2014, plaintiffs moved for reconsideration of the decision to dismiss all claims against Dr. Fuentes.  (Docket No. 19.)  Plaintiffs argued that because MMC is not covered by the FSHCAA, the FTCA applies to neither MMC nor Dr. Fuentes's actions while at that facility.  Id. at p. 2.  On December 3, 2014, the Court granted the reconsideration, dismissing *with* prejudice the claims against Dr. Fuentes for the medical services he performed at CHC and dismissing *without* prejudice the claims against Dr. Fuentes for the medical services he performed at MMC.  (Docket No. 20.)

On December 4, 2014, defendants moved for reconsideration of the dismissal *without* prejudice of the claims against Dr. Fuentes for the services he performed at MMC.  (Docket No. 21.)  Before considering this motion, however, the Court issued an amended judgment that dismissed these claims against Dr. Fuentes *without* prejudice on December 12, 2014.  (Docket No. 22.)  Defendants' motion for reconsideration, (Docket No. 21), is thus still pending.

On January 9, 2015, defendants filed a motion to alter the amended judgment, requesting again that *all* claims against Dr. Fuentes dismissed *with* prejudice.  (Docket No. 23.)  Plaintiffs filed an opposition January 16, 2015, (Docket No. 24), to which defendants replied on February 6, 2015, (Docket No. 27).

## STANDARD

Pursuant to Federal Rule of Civil Procedure 59(e), a party may move to alter or amend a judgment.  Fed. R. Civ. P. 59(e).  These motions are appropriate in a limited number of circumstances, such as where there is newly discovered evidence, or where the movant can demonstrate that the "court committed a manifest error of law." Calderon-Serra v. Wilmington Trust Co., 715 F. 3d 14, 20 (1st Cir. 2013); accord Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014).  The reviewing court has considerable discretion in deciding whether to grant the motion.  Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 190 (1st Cir. 2004).

## DISCUSSION

The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the "Westfall Act," is an amendment to the FTCA that grants federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties. United States v. Smith, 499 U.S. 160, 163 (1991); see 28 U.S.C. § 2679. When a federal employee is sued for wrongful or negligent conduct, the Westfall Act empowers the Attorney General or her designee to certify that the employee "was acting within the scope of" his or her employment at the time of the disputed incident. 28 U.S.C. § 2679(d). Upon this certification, the employee is dismissed from the action, and the United States is substituted as the defendant. Id. Actions commenced in state court are to be removed to federal district court, and the certification conclusively establishes the scope of employment for removal purposes. Id. at § 2679(d)(2). Thereafter, the FTCA provides the exclusive remedy. Velez-Diaz v. Vega-Irizarry, 421 F.3d 71, 76 (1st Cir. 2005).

The FSHCAA expanded the federal government's waiver of sovereign immunity pursuant to the FTCA. Ismie Mut. Ins. Co. v. U.S. Dep't. of Health & Human Servs., 413 F. Supp. 2d 954, 955 (N.D. Ill. 2006). Although the FTCA generally covers only "employees of the federal government," the FSHCAA provides that "federally supported health centers, their employees, and certain

Civil No. 14-1553 (FAB)                                              6

contractors are deemed to be employees of the Public Health Service" for purposes of medical malpractice suits.  Id. at 955-56 (citing 42 U.S.C. § 233(g)(1)(A)).  "Once a person is deemed an employee of the [Public Health Service], the FTCA provides the exclusive remedy for alleged malpractice."  Id. at 956 (citing 42 U.S.C. § 233(a)).

Here, the United States has provided the necessary certification to invoke FTCA coverage.  The United States Attorney certified that Dr. Fuentes was acting within the scope of his employment at CHC at the time of the conduct alleged in the complaint.  See Docket No. 12-3.  Indeed, the parties agree that CHC is a federally-funded health center and that the FTCA therefore covers CHC as well as Dr. Fuentes's conduct at that facility.  See, e.g., Docket No. 16.

Plaintiffs contend, however, that the FTCA's coverage does not extend to all of the medical services that Dr. Fuentes provided to Ms. Miranda during the events at issue.  (Docket No. 19 at p. 2.) Because MMC is not a federal health center, plaintiffs argue, the FTCA does not cover the labor and delivery services that Dr. Fuentes rendered at that facility.  Id.  In response, defendants assert that Dr. Fuentes prenatally treated Ms. Miranda at CHC, but because CHC was not equipped for deliveries, Dr. Fuentes admitted Ms. Miranda to MMC, where he had admitting

privileges, when she went into labor. Id. at pp. 2-5.[4] Defendants thus argue that the treatment that Dr. Fuentes provided at MMC was done so in his capacity as an employee of CHC. Id. at p. 5.

The issue before the Court is whether the FTCA covers a federal-employee doctor's services performed "outside the confines" of the federally-funded health center. The Supreme Court has found that Westfall Act certification, while determinative as to removal, is "the first, but not the final word" on whether the federal actor is immune from suit. See Osborn v. Haley, 549 U.S. 225, 246 (2007). Beyond removal, the question of whether a federal employee acted within the scope of his or her office or employment, pursuant to the FTCA, "is to be determined by law of *respondeat superior* of state in which incident occurred." See Aversa v. United States, 99 F.3d 1200, 1208-09 (1st Cir. 1996); accord Lacey-Echols ex rel. Lacey v. Murphy, Civ. No. 02-2281 (WGB), 2003 WL 23571269, at *7 (D.N.J. Dec. 17, 2003) ("[T]he state law of *respondeat superior* applies to the scope of employment issue."). In Puerto Rico, the doctrine of *respondeat superior* considers: (a) the employee's "[d]esire to serve, benefit, or further his employer's business or interest"; (b) where the act is "reasonably related to the scope of

---

[4] Defendants also indicate that as part of its grant application to HHS, CHC applied for and was granted coverage extending to medical rounds and admitting patients at MMC. (Docket No. 23-1 at p. 2.) Defendants submit that this type of arrangement is "especially common in the area of obstetrics," because federally-funded health centers are typically not "equipped for deliveries, emergent care, surgical procedures and neo-natal care." Id.

Civil No. 14-1553 (FAB)                                                 8

the employment"; and (c) whether the employee was "prompted by purely personal motives."  See Vernet v. Serrano-Torres, 566 F.3d 254, 261 (1st Cir. 2009); Borrego v. United States, 790 F.2d 5, 7 (1st Cir. 1986).

Considering these factors, the Court finds that Dr. Fuentes was acting in the scope of his employment with CHC when he delivered Ms. Miranda's infant at MMC.  According to defendants, during the events in question, Dr. Fuentes was an employee of CHC and "was not employed by any other public or private medical facility."  See Docket No. 23-1 at pp. 3-4, 6; see also Docket No. 23-4.  Defendants submit that Dr. Fuentes provided prenatal care to Ms. Miranda at CHC from September 2009 until April 2010, when Dr. Fuentes rendered labor and delivery services to Ms. Miranda at MMC.  See Docket No. 23-4 at p. 1.  Defendants also indicate that CHC's federal grant coverage specifically extends to certain services performed at MMC, and that such an arrangement is common for health centers like CHC, which are not equipped to handle non-routine activities, such as deliveries and emergent care.  (Docket No. 23-1 at p. 2.)  Finally, defendants aver that Dr. Fuentes received compensation directly from CHC.  (Docket No. 23-1 at p. 6.)  Defendants admit that Dr. Fuentes billed privately for the labor and delivery services rendered to Ms. Miranda at MMC, but maintain that he did so in compliance with the FTCA, (Docket No. 23-4 at p. 1).

Taken together, these facts indicate that Dr. Fuentes was serving CHC when he provided labor and delivery services to Ms. Miranda at MMC, that those services were directly related to his employment as an obstetrician at CHC, and that his actions were in no way prompted by personal motives.  Accord Delgado v. Our Lady of Mercy Med. Ctr., Civ. No. 06-5261 (BSJ), 2007 WL 2994446, at *3 (S.D.N.Y. Oct. 12, 2007) (finding FTCA-covered doctor was acting in the course of his employment with FTCA-covered health center when he performed surgery at non-covered hospital where health center lacked the resources for the surgery and doctor was not compensated for the treatment apart from his regular compensation).  Indeed, plaintiffs do not argue otherwise, but instead insist that Dr. Fuentes was obligated to "report and transfer directly to [CHC] all funds received" for the services provided at MMC "within a reasonable period of time."  (Docket No. 24 at pp. 1-2.)

In relevant part, the Federal Tort Claims Policy Manual ("FTCA Manual") permits covered entity providers to bill directly for services provided to covered entity patients for off-site services and provides guidelines applicable to certain alternate billing arrangements.  See Docket No. 23-6 at p. 14.  In the case of an FTCA-covered employee who "bills for a service delivered at a location not identified as a covered entity site within its approved Federal section 330 scope of project," the FTCA Manual informs that coverage will apply if certain conditions are met,

Civil No. 14-1553 (FAB)                                                    10

including the reporting and fund transfer requirements cited by plaintiffs.  See id.  These requirements, however, apply only when the services are provided at "a location *not identified as a covered entity site* within its approved Federal section 330 scope of project."  See id. (emphasis added).  It is undisputed that CHC applied for and was granted coverage extending to medical rounds and admitting patients at MMC.  See Docket No. 23-1 at p. 2; Docket No. 23-2 at p. 22.  The FTCA Manual provides that FTCA coverage extends to "the performance of medical, surgical, dental, or related functions within the scope of the approved Federal section 330 grant project," which includes "sites, services, and other activities or locations, as defined in the covered entity's grant application."  (Docket No. 23-6 at p. 9.)

In light of the foregoing, the Court finds that Dr. Fuentes was acting within the scope of his deemed federal employment when he treated Ms. Miranda at MMC when the events at issue occurred. The United States Attorney's scope-of-employment certification, therefore, does not exclude Dr. Fuentes as the provider of these services.  See Docket No. 12-3.  Accordingly, the FTCA covers the claims against Dr. Fuentes.

**CONCLUSION**

Having admittedly failed to exhaust administrative remedies, as required by the FTCA, plaintiffs moved for voluntary dismissal of the claims against CHC and Dr. Fuentes.  See Docket No. 16.  The

Civil No. 14-1553 (FAB)                                                        11

Court granted plaintiffs' motion, dismissing *with* prejudice all claims against Dr. Fuentes and CHC.  (Docket No. 18.)  The Court permitted plaintiffs to bifurcate the claims against Dr. Fuentes for the services provided, see Docket No. 20, but did so in error.  As explained above, Dr. Fuentes was a federal employee during the events giving rise to the complaint, including the events surrounding the birth of Ms. Miranda's infant at MMC.  This being the case, dismissal *with* prejudice was warranted for *all* of the claims against Dr. Fuentes.

For these reasons, defendants' motion to alter the amended judgment, (Docket No. 23), is **GRANTED**.  The claims against Dr. Fuentes are, therefore, **DISMISSED WITH PREJUDICE.**

Judgment shall be entered accordingly.

In light of the Court's ruling, defendants' initial motion for reconsideration, (Docket No. 21), is **DISMISSED AS MOOT.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 25, 2015.

                                             s/ Francisco A. Besosa
                                             FRANCISCO A. BESOSA
                                             UNITED STATES DISTRICT JUDGE